UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT BARROCA, et al.,<br><br>          Plaintiffs,<br><br>    v.<br><br>HAYWARD AREA RECREATION AND PARKS DISTRICT, et al.,<br><br>          Defendants. | Case No. 25-cv-00440-EMC<br><br>**ORDER GRANTING MOTIONS TO DISMISS**<br><br>Docket Nos. 30, 35 |

## I.     INTRODUCTION

Plaintiffs Robert Barroca and Raelynn Gomes, both proceeding pro se, have filed a complaint asserting eight claims against Hayward Area Recreation and Parks District ("HARD"); HARD Park Rangers Ed Untalan, Dachineewan Oliver, and Hillary Fitzpatrick; retired HARD employee Marco Hernandez; a John Doe civilian; Alameda County Sheriff's Office spokeswoman Tya Modeste; the Alameda County Sheriff's Office ("ACSO"); and U.S. Probation Officers Razan Ghishan and a Jane Doe officer.[1]

Now pending before the Court is Defendants Tya Modeste and ACSO's motion to dismiss Claim Seven, Dkt. No. 30, and Defendant Razan Ghishan's motion to dismiss Claim Eight, Dkt. No. 35. The Court hereby **GRANTS** both motions to dismiss.

---

[1] This case was transferred to this Court, as related to *United States v. Barroca*, No. 3:94-cr-00470-EMC (N.D. Cal.) ("Criminal Matter").

## II.   SUMMARY OF CLAIMS AND PROCEDURAL BACKGROUND

Defendants Tya Modeste and ACSO move to dismiss Plaintiff Barroca's seventh claim for defamation against ASCO's Spokeswoman Tya Modeste and ACSO wherein Plaintiff Barroca claims that Ms. Modeste intentionally reported incorrect information about his criminal history to seven different news sources (KRON, NBC, Alameda County Sheriff's Office Facebook, KQED, Hoodline, The Patch – Castro Valley, and California County News) to smear Barroca's name. *Amend. Compl.* at 40, Dkt. No. 12.

Defendant Razan Ghishan moves to dismiss Plaintiffs Barroca and Gomes's eighth claim, which alleges that U.S. probation officers Razan Ghishan and Jane Doe violated Plaintiffs' Fourth Amendment rights when they arrested Plaintiff Barroca in the backyard and entered and searched Plaintiff Gomes's Hayward house without probable cause. *Id.* at 27.

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6). *See* Fed. R. Civ. P. 12(b)(6). To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). The Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (quoting *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014)). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the

misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556).

## IV.   DISCUSSION

A.   <u>Defendants Alameda County Sheriffs' Department and Tya Modeste's Motion to Dismiss (Docket No. 30)</u>

   1.   <u>Alameda County Sheriff's Department</u>

      i.   <u>California Government Code § 911.2</u>

The California Tort Claims Act ("CTCA"), codified as California Government Code § 911.2, requires that "[a] claim relating to a cause of action [against public entities] . . . shall be presented . . . not later than six months after the accrual of the cause of action." Cal. Gov. Code § 911.2. This prerequisite is a mandatory condition precedent to filing suit and applies to state law claims for damages asserted against public entities. *Mangold v. California Public Utilities Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995).

Plaintiff Barroca did not file a written claim for defamation with ACSO within 6 months of accrual of the cause of action asserted herein – the entry and arrest on May 30, 2024; The CTCA was not received by ACSO until May 22, 2025. Pl.'s Consol. Reply in Opp'n to Defs.' Mot. to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) at 18, Dkt. No. 54. As a result, the claim is untimely under Cal. Gov. Code § 911.2.

      ii.   <u>California Government Code § 911.4</u>

California Government Code § 911.4(b) provides that if a claim is not filed within 6 months of accrual of the cause of action, "a written application may be made to the public entity for leave to present that claim . . . within a reasonable time not to exceed one year after the accrual of the cause of action and shall state the reason for the delay in presenting the claim." Cal. Gov. Code § 911.4(b). If leave is granted by the entity, the claim may be timely filed even if it is not

3

within the normal 6-month period.

Although Plaintiff Barroca filed a tort claim with ACSO on May 22, 2025, Pl.'s Reply at 18, Dkt. No. 54, he did not file an application for leave to present a late claim. He cannot file for leave now because it has been over one year since the accrual of Plaintiff's cause of action. Therefore, Plaintiff Barroca's Claim 7 Fails to comply with Cal. Gov. Code § 911.2 and must be dismissed with prejudice.

### 2. Defendant Tya Modeste

#### i. California Government Code § 950.2

Plaintiff alleges that Defendant Tya Modeste appeared on behalf of Defendant ACSO, as ACSO's spokeswoman, to smear Plaintiff's name in a KQED article. *Amend. Compl.* at 39, Dkt. No. 12. These alleged actions were taken in the course and scope of her employment with ACSO. *Id.*

Under Cal. Gov. Code § 950.2, "a cause of action against a public employee . . . for injury resulting from an act . . . in the scope of his employment as a public employee is barred if an action against the employing public entity for such injury is barred under [the other sections of the California Torts Claims Act]." Cal. Gov. Code § 950.2. Here, as noted above, Plaintiff Barroca failed to timely file within 6 months a CTCA claim and thus Claim 7 against the ACSO is barred as untimely under Cal. Gov. Code § 911.2. Under Cal. Gov. Code § 950.2, since the action against the employing public entity (ACSO) is barred, the corresponding Claim 7 against Defendant Tya Modeste is likewise barred.

#### ii. California Government Code § 950.4

There is a narrow exception provided by Cal. Gov. Code § 950.4 wherein "[a] cause of action against a public employee . . . is not barred by Section 950.2 if the plaintiff . . . did not know . . . within the period for the presentation of a claim to the employing public entity . . . .prescribed by Section 911.2 . . ., that the injury was caused by . . . the public entity or . . . employee of the public entity in the scope of his employment as a public employee." Cal. Gov.

4

Code § 950.4.

This exception does not apply here. Plaintiff Barroca clearly knew that Ms. Modeste was employed by Alameda County and acted in her official capacity; the amended complaint identifies her as the spokesperson for the Alameda County Sheriff's Office. *Amend. Compl.* at 38–40, Dkt. No. 12. Nothing suggests Plaintiff Barroca was not aware she was an employee of the ACSO at the time she made the challenged statements.

Accordingly, Plaintiff Barroca's Claim 7 against Defendant Tya Modeste is barred under the California Tort Claims Act pursuant to Cal. Gov. Code § 950.2.

B.    Defendant Ghishan's Motion to Dismiss (Docket No. 35)

Plaintiffs are asserting a *Bivens* claim alleging a Fourth Amendment violation by a U.S. Probation Officer. Officer Razan Ghishan has been Plaintiff Barroca's probation officer since 2022, and Barroca had provided Officer Ghishan with his Belmont address registered as his probation address. *Amend. Compl.* at 17, Dkt. No. 12.

According to Officer Ghishan's Motion to Dismiss, and the subject of the Court's finding of Plaintiff Barroca violating a term of his parole in the related Criminal Matter, "Plaintiff Barroca stabbed a man in Meek Park in Hayward on the night of January 30, 2024" and stemming from the victim's description, HARD Rangers (Dachineewan Oliver according to Plaintiffs' Amended Complaint at page 19) told the ACSO Deputies "that they suspected Barroca was responsible for the stabbing." Mot. to Dismiss Amend. Compl. at 8, Dkt. No. 35. The ACSO deputies received an arrest warrant and arrested Plaintiff Barroca on "May 16, 2024." *Id.*

The next day, Officer Ghishan filed a Petition for Warrant for Person Under Supervision which alleged amongst two other condition violations that "Barroca changed his address to the Hayward residence without informing Probation . . . [based on] the Alameda County Sheriff's Office Incident Report #24-001486, which revealed Mr. Barocca is known by . . . (HARD) Rangers [along with] prior law enforcement contacts with Mr. Barroca [to reside in] 16922 Harvard Avenue in Hayward, CA." Criminal Matter Dkt. No. 983 at 3-4. This Court thereafter "[found] there [was] probable cause to believe there has been a violation of the conditions of

1  supervision" and ordered issuance of a no-bail arrest warrant. *Id*. at 5.

2        On May 30, 2024, the U.S. Marshals arrested Barroca at Gomes's residence. Defendant
3  Ghisan subsequently searched the property incident to that arrest. *Amend. Compl*. at 19, Dkt. No.
4  35. Plaintiffs allege that Ghishan had no legitimate reason to be at Gomes's residence other than
5  based on the misinformation provided by Ranger Oliver and therefore no probable cause to search
6  the Hayward residence. *Id.*

7        Officer Ghishan explained that while surveilling Meek Estate Park on May 30, 2024 (the
8  day of the arrest), they "observed Barroca in the park at about 9:30 a.m." Mot. to Dismiss Amend.
9  Compl. at 9, Dkt. No. 35. The surveillance concluded that none of the probation officers "saw
10 Barroca drive to the Harvard Avenue residence that morning" supporting "Barroca had stayed the
11 night at the Harvard Avenue residence and had been residing there." *Id.* Following, the Deputy
12 Marshals called Plaintiff Barroca out of the Hayward residence, and he was arrested with
13 possession of a key to the front door. *See* Criminal Matter Dkt. No. 1020 ¶¶ 11-12. Officer
14 Ghishan concluded that "there was probable cause to believe on May 30, 2024 (as well as on May
15 17, 2024), that Barroca was residing at the Harvard Avenue residence . . . [and] decided to execute
16 a search of that residence" pursuant to Plaintiff Barroca's search condition. Mot. to Dismiss
17 Amend. Compl. at 10, Dkt. No. 35.

18       Plaintiff Barroca concedes that his repeated absence from his Belmont address created a
19 "false impression that he was living elsewhere" for Officer Ghishan. *Amend. Compl.* at 25–26,
20 Dkt. No. 12. Plaintiff Barroca's search condition applied to "any property under his . . . control"
21 which required him to "warn any residents that the premises may be subject to searches."
22 Criminal Matter Dkt. No. 731 at 5. If his residence was at the Hayward residence, a search would
23 be permitted. Barroca disputes he resided there and that it was not constitutionally permissible to
24 search the Hayward residence.

25       Defendant Ghishan moves to dismiss Plaintiffs' Fourth Amendment claims, arguing they
26 are barred by qualified immunity, and further, that this Court should not extend *Bivens* to a Fourth
27 Amendment claim against U.S. probation officers. The Court begins with Defendant Ghishan's
28 claim for qualified immunity.

1. Qualified Immunity

The Supreme Court established that "[q]ualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018). Qualified "immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id*. "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Id*. (internal quotation marks omitted). For a plaintiff to overcome qualified immunity, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id*. (internal quotation marks omitted). "Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded [he were not violating Plaintiffs' constitutional rights]; but if officers of reasonable competence could disagree on this issue, immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Plaintiffs allege Defendant Ghishan executed a search without probable cause or a search warrant in violation of the Fourth Amendment. The Supreme Court has held that "the warrantless search of [a probationer's residence], supported by reasonable suspicion and authorized by a condition of probation, was reasonable within the meaning of the Fourth Amendment." *United States v. Knights*, 534 U.S. 112, 122 (2001). Here, the condition of probation included that Plaintiff Barroca "shall submit his/her person, residence, office, vehicle, or any property under his/her control to a search," which "shall be conducted by a United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release." Criminal Matter Dkt. No. 731. at 5.

"Both parolees and probationers 'are on the 'continuum' of state-imposed punishments.'" *U.S. v. Franklin*, 603 F.3d 652, 656 (9th Cir. 2010) *(*quoting *Samson v. California,* 547 U.S. 843, 850 (2006)). With regard to Plaintiff Barroca's Fourth Amendment rights, the Supreme Court in *Knights* explained that the right to privacy of individuals on probation is more limited:

> Inherent in the very nature of probation is that probationers do not enjoy the absolute liberty to which every citizen is entitled. Just as other punishments for criminal convictions curtail an offender's

7

> freedoms, a court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens. The judge who sentenced Knights to probation determined that it was necessary to condition the probation on Knights's acceptance of the search provision. It was reasonable to conclude that the search condition would further the two primary goals of probation-rehabilitation and protecting society from future criminal violations. The probation order clearly expressed the search condition and Knights was unambiguously informed of it. The probation condition thus significantly diminished Knights's reasonable expectation of privacy.

*United States v. Knights*, 534 U.S. 112, 119-20 (2001) (citations and quotations omitted). This same diminishment of a right to privacy applies to third parties living with individuals on probation, except to spaces that are exclusively within the third party's control. *See United States v. Patterson*, 276 F. Supp. 3d 994 (S.D. Cal. 2017) (finding a search of parts of the home within exclusive control of third-party not reasonable). In *Motley v. Parks*, the Ninth Circuit made clear that parole officers may conduct "warrantless search[s] pursuant to a parolee's parole condition," even third-party residences, if there is "probable cause to believe that the parolee is a resident of the house to be searched." *Motley v. Parks*, 432 F.3d 1072, 1080 (9th Cir. 2005) (*en banc*), overruled in part on other grounds by *United States v. King*, 687 F.3d 1189 (9th Cir. 2012) (*per curiam*). In this case, both Plaintiffs were subject to warrantless searches of the Hayward residence if there was probable cause to believe Barroca resided there.

Both Plaintiffs fail to allege any facts suggesting it was objectively unreasonable for Officer Ghishan to believe she had probable cause to believe Barroca resided at the Hayward residence. Probable cause requires "that the facts available to the officer would warrant a man of reasonable caution in the belief" that the Hayward residence was Plaintiff Barroca's residence at the time. *Texas v. Brown,* 460 U.S. 730, 742 (1983). Even when viewing the facts in the light most favorable to Plaintiffs, the record reflects ample evidence to support Officer Ghishan's search of what she believed was Plaintiff Barroca's residence. Barroca was repeatedly absent from his registered address in Belmont, prompting reasonable suspicion that he may have changed residences without notifying probation. *Amend. Compl*. at 25–26, Dkt. No. 12. Plaintiff Barroca concedes that his conduct may have created a "false impression" that he lived at a different location to Officer Ghishan. *Id.* Plaintiff alleges that HARD Ranger Dachineewan Oliver

8

1  informed ASCO's deputies that he suspected Barroca was responsible for a stabbing incident and
2  associated him with the Hayward property. *Amend. Compl.* at 19, Ckt. No. 12; Mot. to Dismiss
3  Am. Compl. at 8, Dkt. No. 35. The ACSO's incident report referenced Barroca's prior law
4  enforcement contacts linking him to that address. Mot. to Dismiss Am. Compl. at 9, Dkt. No. 35.
5  During surveillance of Meek Park on May 30, 2024, probation officers observed Barroca at 9:30
6  a.m. but did not see him drive there, supporting an inference that he had stayed the night nearby.
7  *Id.* Later that day, officers arrested Barroca after calling him out of the Hayward residence, and he
8  was found in possession of a key to the front door. *See* Criminal Matter Dkt. No. 1020 ¶¶ 11-12
9  (Defendant Ghisan's Declaration in the related Criminal Case). These facts are far more than a
10 mere hunch; they support a reasonable conclusion by any probation officer that there was probable
11 cause to believe that Barroca resided at the Hayward address, and thus the Hayward address was
12 subject to Barroca's parole search conditions. *See e.g. U.S. v. Franklin*, 603 F.3d 652 (9th Cir.
13 2010) (finding probable cause and noting that "[t]he temporary nature of the occupancy does not
14 change the fact that for the night or nights that [defendant] rented Room 254, he was legally
15 entitled to use the room and to control access to it. For that time period, the room was his
16 residence in the sense meant in the community custody agreements."); *Motley v. Parks*, 432 F.3d
17 1072, 1082 (9th Cir. 2005) (*en banc*), overruled in part on other grounds by *United States v. King*,
18 687 F.3d 1189 (9th Cir. 2012) (*per curiam*) ("Where an officer has an objectively reasonable,
19 good-faith belief that he is acting pursuant to proper authority, he cannot be held liable if the
20 information supplied by other officers turns out to be erroneous.").
21      Further, Plaintiff Barroca's search condition applied to "any property under his . . .
22 control" which required him to "warn any residents that the premises may be subject to searches."
23 Criminal Matter Dkt. No. 731 at 5. Neither Plaintiff is able to overcome qualified immunity to
24 argue that Defendant Ghisan's conduct was so unreasonable to have placed the "constitutional
25 question beyond debate." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018). Defendant Ghisan's
26 search was conducted pursuant to a reasonable belief that Barroca resided at the Hayward address.
27      Accordingly, Defendant Ghishan is entitled to qualified immunity and Plaintiffs' Claim 8
28

against Razan Ghishan is barred.[2]

2. <u>Bivens Claim as to U.S. probation officers</u>

Because the Court finds Plaintiffs' claims against Defendant Ghishan are barred by qualified immunity, the Court need not reach the *Bivens* question.

### V.     CONCLUSION

The Court **GRANTS** Defendants ASCO and Tya Modeste's motion to dismiss with prejudice. The Court **GRANTS** Defendant Razan Ghishan's motion to dismiss with prejudice.

**IT IS SO ORDERED**.

Dated: August 1, 2025

_____
EDWARD M. CHEN
United States District Judge

---

[2] After Plaintiffs repeatedly failed to file timely oppositions, the Court granted Plaintiff an extension of time to file any oppositions to the present Motions to Dismiss. Dkt. No. 52. Plaintiff then filed an opposition to Defendant Ghisan's Motion. Dkt. No. 54. Defendant Ghisan then filed a Supplement Brief to address Plaintiffs' belated Opposition because Defendant Ghisan's previous reply was filed without the opportunity to address Plaintiffs' (belated) opposition. Dkt. No. 57. Plaintiff has now moved to strike Defendant Ghisan's Supplemental Brief, arguing it was made in "bad faith," and contesting whether there was a key in Plaintiff Barroca's pocket to the Hayward resident's front door. He argues that instead the key was only to the "screen door." Dkt. No. 59. Plaintiff Barroca then asks the Court for an evidentiary hearing to address "probable cause." The Court **DENIES** Plaintiff's motion to strike as it meritless. As noted above, there is ample evidence to support that Defendant Ghisan had probable cause to search the Hayward residence. Whether the key was to the "screen door" of the Hayward residence, or to the front door, is immaterial. Either way, it showed he had special access.